92 N.J. Super. 143 (1966)
222 A.2d 519
PHILIP MARX, PLAINTIFF-RESPONDENT,
v.
LOUIS JAFFE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1966.
Decided August 5, 1966.
*144 Before Judges GAULKIN, LABRECQUE and BROWN.
Mr. Richard M. Glassner argued the cause for appellant (Mr. Salvatore A. Brancato, on the brief).
Mr. Louis Asarnow argued the cause for respondent.
PER CURIAM.
Plaintiff instituted this action to recover on an alleged loan to defendant represented by checks totaling $13,000. Defendant contends that the money received by him did not constitute a loan, but was, instead, an advance rebate to the U-Neek Super Market (U-Neek), a now bankrupt corporation of which defendant was principal stockholder, under an agreement whereby U-Neek would purchase its milk requirements from Clinton Milk Company (Clinton), a dairy controlled by plaintiff. He urges that this was in contravention of N.J.S.A. 4:12A-30 which precluded agreements whereby the price of milk was reduced below that fixed by the Director of the Office of Milk Industry.
The trial court, sitting without a jury, determined that plaintiff was entitled to recover the amount of the checks issued *145 to defendant, less $1,000 in credits earned by U-Neek under the rebate agreement.
We remanded the matter for further factual findings on questions which we deemed essential to our determination of the appeal. In response to our specific inquiry, the trial court found: (1) checks totaling $13,000 were made payable to defendant personally and he agreed to make repayment; (2) defendant deposited the full amounts in the account of U-Neek; (3) plaintiff and defendant agreed that the latter's indebtedness would be reduced by an amount equal to 10% of all sales of milk or milk products by Clinton Milk Company to U-Neek Super Market; (4) plaintiff's contention in advancing the monies was to circumvent N.J.S.A. 4:12A-30; (5) defendant acted on behalf of U-Neek and plaintiff knew he was so acting. The judge concluded that the parties' agreement was contrary to N.J.S.A. 4:12A-30, but that the penalty provisions of the statute were intended by the Legislature to be exclusive; consequently, the agreement was enforceable.
We are in accord with the conclusion of the trial judge that the agreement between the parties was violative of the statute. The device of couching the rebate agreement between U-Neek, represented by defendant, and Clinton, controlled by plaintiff, in the guise of a personal loan between the individuals does not alter the true nature of the transaction. We also recognize that by instituting this action against defendant personally, plaintiff hopes not only to avoid the impact of N.J.S.A. 4:12A-30, but also to avoid being a mere general creditor of the insolvent corporation, which would be his status had the "loan" been made directly to U-Neek.
Our accord with the trial judge that the agreement violates the statute does not extend to his conclusion that it is nonetheless enforceable because the Legislature had prescribed the exclusive penalties for violations thereof. Violators of the act subject themselves to a penalty of not more than $50 for the first offense and not more than $200 for the *146 second offense, N.J.S.A. 4:12A-39, and the possible suspension or revocation of their licenses. N.J.S.A. 4:12A-35; In re E.J. McGovern Dairy Products, Inc., 60 N.J. Super. 163 (App. Div. 1959).
The fact that the alleged loan transaction contravenes the statute clearly renders the agreement illegal. Brooks v. Cooper, 50 N.J. Eq. 761, 771 (E. & A. 1893); Restatement, Contracts, § 580 (1932). However, merely to call a contract illegal is not to state the effects of such illegality. In each case the legislative intent must be sought. John J. Carlin, Inc. v. O'Connor, 126 N.J.L. 243, 245-246 (E. & A. 1941).
In N.J.S.A. 4:12A-30 the Legislature provided that any rebate "contract, arrangement, agreement or understanding is hereby prohibited and declared to be contrary to the public interest * * *." This express prohibition of any bargain which reduces milk prices below the fixed minimum, coupled with the declaration that such bargains are contrary to the public interest, manifests the legislative intention that such bargains are unenforceable and that the statutory penalties are cumulative.
It is said to be an established rule that "the law will not assist either party to an illegal contract. The parties being in pari delicto, it will leave them where it finds them. If the contract be still executory, it will not enforce it, and if already executed, it will not restore the status quo ante." Cameron v. International Alliance of Theatrical Stage Employees, Local 384, 118 N.J. Eq. 11, 20 (E. & A. 1935). The rule finds particular application in this case for two reasons. First, the explicit prohibition of any rebate agreement makes it manifest that such an agreement could not be enforced by one of the parties thereto were it wholly executory. Enforcement would promote the private interest at the expense of the public interest. Second, neither the partial execution in the instant case, nor any other factors, bring this matter within any of the exceptions to the general rule of non-enforceability. See generally, Restatement, op. cit., §§ 598-609.
*147 This is not an instance where refusal to enforce or rescind an illegal bargain would produce a harmful effect on the parties for whose protection the law making the bargain illegal exists. In such cases enforcement or rescission, whichever is appropriate, is allowed. Id., § 601; Cameron v. International Alliance of Theatrical Stage Employees, supra, at pp. 20-21. Here, on the contrary, the Legislature has expressly determined that the public interest in a constant flow of wholesome milk to consumers requires price regulation. Abbotts Dairies, Inc. v. Armstrong, 14 N.J. 319, 330 (1954). The public interest does not require that the court give either efficacy or consolation to the efforts of a party to an agreement to subvert the administratively determined price structure.
Further, this is not an instance where enforcement commends itself, despite illegality, in order to avoid an unjust forfeiture. See 6A Corbin, Contracts, § 1522, pp. 761-762 (1962). That consideration is inapplicable where the result accomplished by enforcement is expressly prohibited by statute. Restatement, op. cit., §§ 600, 603. More importantly, however, there is no unjust forfeiture in the present case. Plaintiff delivered the advance rebate to defendant with knowledge that the monies were to be a fund for U-Neek. Defendant was a mere conduit, despite the efforts of the parties to cloak him otherwise. It would be incongruous to reward plaintiff with a position superior to that of the creditors of the now insolvent U-Neek because of his efforts to circumvent N.J.S.A. 4:12A-30.
In summary, we hold that the statutory prohibition of rebate agreements requires that no phase of this agreement may be enforced.
Reversed and remanded for the entry of judgment for defendant. No costs.